UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DOSHAWN WARREN, | ) | |
|    Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 17-4016 |
| | ) | |
| LOIS LINDORFF, et. al., | ) | |
|    Defendants | ) | |

MERIT REVIEW ORDER

    This cause is before the Court for merit review of the Plaintiff's complaint. The Court is required by 28 U.S.C. §1915A to "screen" the Plaintiff's complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

    Plaintiff, a pro se prisoner, claims Defendants Health Care Administrator Lois Lindorff, Dr. Kul Sood, and Wexford Health Source, Inc. violated his constitutional rights at Hill Correctional Center. Plaintiff says the Defendants were deliberately indifferent to his serious medical condition when delayed or denied medical care for a painful lump in his thyroid gland. Plaintiff's complaint includes 41 pages of exhibits which the Court will also consider in its review. (Comp., p. 12-53). *See* Fed.R.Civ.P. 10(c)("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Mustache v. Johnson*, 2009 WL 1683207, at *2 (E.D.Wis. June 16, 2009)(attachments are properly considered in screening pursuant to

28 U.S.C.1915A); *Rice v. Hathaway*, 2008 WL 2789317, at *1 (S.D.Ill. July 18, 2008)("For purposes of this § 1915A review, the 'complaint' consists of both the original complaint and the first amended complaint plus all attachments and exhibits thereto.").

Plaintiff says the lump was first discovered at Jacksonville Correctional Center in 2016 during a routine examination. Based on the subsequent pleadings and exhibits, it appears this date is inaccurate. For instance, in response to Plaintiff's grievance, the grievance officer maintains Plaintiff was at Jacksonville Correctional Center from March of 2010 to January of 2014. (Comp., p. 17). Nonetheless, Plaintiff says he "was sent to an outside hospital for an MRI which came back negative for cancer." (Comp., p. 3). An unnamed doctor told Plaintiff the mass could still become cancerous and therefore he should have regular checks every 30 days. Plaintiff was then released from incarceration, but he later returned to the Illinois Department of Corrections (IDOC).

Plaintiff says during this second incarceration, he was first housed at Western Illinois Correctional Center where he received a monthly check of his thyroid including blood work. An ultrasound was also performed, but Plaintiff was transferred before receiving the results.

Plaintiff says he arrived at Hill Correctional Center on July 22, 2016. (Comp, p. 4). The IDOC response to Plaintiff's grievance notes Plaintiff was at Western Illinois Correctional Center from December of 2014 to July of 2015, and he transferred to Hill Correctional Center on July 22, 2015. (Comp., p. 17). Based on Plaintiff's subsequent pleading, it appears these dates are correct.

2

Plaintiff informed the intake nurse at Hill Correctional Center of his condition and he asked to speak with a doctor. Plaintiff says it took some time, but eventually he met with Dr. Sood. The doctor examined his glands and told Plaintiff "if it was him, he would not worry about it." (Comp., p. 4). Plaintiff says the doctor showed a reckless disregard for his condition.

On December 22, 2015, Plaintiff noticed his gland had increased in size and he felt pain when he swallowed. Plaintiff says he sent several requests to the Health Care Unit for assistance, but received no response.

On February 20, 2016, Plaintiff met with a nurse during sick call. The nurse examined Plaintiff, provided Ibuprofen, and scheduled Plaintiff to see the doctor. Plaintiff was advised to return to the Health Care Unit if his condition worsened. Plaintiff claims the pain medication ran out before he saw the doctor leaving him to suffer in pain.

The medical record confirms Plaintiff's visit and his report of pain as a four on a one-to-ten scale. (Comp, p. 25). Plaintiff further reported the problem started approximately one month prior. The Plaintiff has also provided copies of the prescriptions confirming he was provided Acetaminophen and Ibuprofen. (Comp, p. 19). However, there is subsequent notation in the medical record indicating a "no show" for the next evaluation of Plaintiff's thyroid on February 22, 2016. (Comp., p. 26). Plaintiff's medication expired on February 25, 2016. (Comp., p. 17).

Plaintiff filed an emergency grievance and the Warden approved emergency review. Plaintiff returned to the Health Care Unit on March 1, 2016, and again met with

3

a nurse. She observed Plaintiff's gland was swollen and also noted irregularities on his tongue and inside his right nostril. She ordered additional medication, an ultrasound, and referral to a dentist for some of Plaintiff's symptoms.

The attached medical records also confirm the nurse's March 1, 2016 examination as well as the ordered medication and testing. (Comp., p. 17, 19. 20, 21, 27-28). In addition, Plaintiff had received previous lab testing regarding his thyroid while at Hill Correctional Center with results in normal limits. (Comp., p. 17). However, the body of Plaintiff's complaint does not mention the previous lab tests or when they occurred.

Plaintiff admits Hill Correctional Center staff sent him to an outside hospital for a thyroid ultrasound, but he does not state in the body of his complaint when it occurred or what results he received. (Comp., p. 6). Nonetheless, Plaintiff has attached a copy of ultrasound report which notes it took place on March 15, 2016. (Comp., p. 31). The report states a suspicious mass was detected and a biopsy was recommended. (Comp., p. 31). The body of Plaintiff's complaint again provides no further information about a biopsy, but his exhibits confirm the biopsy was performed at an outside hospital on April 13, 2016. (Comp., p. 32-33).

Plaintiff next alleges he next saw Dr. Sood on April 20, 2016. The doctor stated he was going to schedule additional follow-up visits concerning Plaintiff's thyroid every six months, instead of every thirty days.[1] Plaintiff said he was still suffering with pain, but he admits the doctor prescribed pain medication. (Comp., p. 8). The April 20,

---

[1] While Plaintiff alleges he was told the visits would take place every six months, the medical record indicates examinations were ordered every three months "for routine monitoring of thyroid nodule." (Comp., p. 39).

4

2016 visit is the last incident alleged in Plaintiff's complaint, and he provides no further information in the body of his complaint. However, the medical record indicates the biopsy revealed the mass in his thyroid was benign. (Comp., p. 38-39). In addition, Plaintiff's lab tests results were normal. (Comp., p. 23).

Based on his allegations, Plaintiff says the Defendants violated his constitutional rights because they were deliberately indifferent to his serious medical condition. To demonstrate an Eighth Amendment violation, Plaintiff must show he suffered from a serious medical need and the Defendants were deliberately indifferent to that need. Assuming Plaintiff had a serious medical condition, Plaintiff's own pleading demonstrates Defendants were not deliberately indifferent to that need. Plaintiff was provided with lab tests, pain medication, an ultrasound test, and a biopsy while he was at Hill Correctional Center. In addition, none of the medical tests or procedures indicated Plaintiff was suffering with cancer or other serious medical condition.

Plaintiff complains Dr. Sood did not believe Plaintiff needed to be checked every 30 days. However, a disagreement among doctors concerning the proper care for a medical condition does not, by itself, rise to the level of a constitutional violation. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 797 (7th Cir. 2014)("choosing one treatment recommendation over another does not amount to deliberate indifference where both recommendations are made by qualified medical professionals."); *Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th Cir.1996) ("Mere differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference."). Furthermore, Dr. Sood did not cancel periodic checks of Plaintiff's

5

thyroid, he just changed the time frame. More important, all tests of Plaintiff's thyroid were negative for cancer.(Comp., p. 39).

Plaintiff also complains that his pain medication ran out after his February 20, 2016 visit. However, the medical record indicates Plaintiff was a no show for the next scheduled examination of his thyroid, and his medication ran out three days later on February 25, 2016. (Comp., p. 17). Plaintiff submitted a medical request on February 26, 2016 and returned to the Health Care Unit on March 1, 2016. (Comp., p. 16) Plaintiff agrees he was provided additional pain medication and an ultra sound was ordered. Furthermore, Plaintiff has not alleged either named Defendant prescribed the medication, or was involved in his health care during this time.

Plaintiff specifically alleges Health Care Administrator Lindorff was deliberately indifferent because she provided inaccurate information about Plaintiff's prior medical examination. For instance, Lindorff reported to both the nurse and the grievance officer that a previous request for an ultra sound at Western Illinois Correctional Center was denied. Plaintiff says this was a lie. While Plaintiff has not provided a copy of a previous ultrasound test, he has provided a copy of the ultrasound ordered at Hill Correctional Center. The report refers to a "comparison exam" from April 2, 2015 which was apparently done during Plaintiff's incarceration at Western Illinois Correctional Center. (Comp., p. 31). In addition, the medical record notes Lindorff's error, indicates a previous ultrasound was approved, but the resulting 2015 ultrasound report was not in Plaintiff's medical file. (Comp., p 27).

6

Again, Plaintiff has failed to articulate a constitutional violation based on the Health Care Provider's comments about his prior testing. Although Lindorff was incorrect and Plaintiff had received an earlier ultrasound, there is no allegation Lindorff interfered or delayed Plaintiff's medical treatment. In addition, based on Plaintiff's own exhibit, the previous ultrasound record was available for comparison when Plaintiff received his second ultrasound in March of 2016.

Since Plaintiff has failed to demonstrate an underlying constitutional violation, the Court must also dismiss any intended official capacity claim against Wexford. *See Windle v. City of Marion, Ind.*, 321 F.3d 658, 663 (7th Cir. 2003); *Boston v. Dart*, 2016 WL 5373083, at *8 (N.D.Ill. Sept. 26, 2016). The Court further notes Plaintiff's alleges the Defendants were acting "pursuant to formal or informal Wexford policies and/or guidelines designed to delay and minimize medical treatment provided to Hill inmates in order to increase Wexford's profitability when they refuse and denied reasonable and adequate treatment for Plaintiff's serious medical condition." (Comp., p. 7). Plaintiff's vague and general claim does not point to a specific policy or practice which led to an alleged constitutional violation, nor does Plaintiff identify what care he was denied.

For all the reasons cited, Plaintiff has failed to state a claim that any of the named Defendants violated his constitutional rights. Since Plaintiff has failed to articulate a federal claim, the Court declines to exercise supplemental jurisdiction over his state law claims of negligence or intentional infliction of emotional pain. *See* 28 U.S.C. §1367(c). *See also City of Chicago v. Intern. College of Surgeons*, 522 U.S. 156 (1997) (stating that pendent jurisdiction is a matter of discretion); *Van Harken v. City of Chicago*, 103 F.3d

1346, 1354 (7th Cir. 1997) (noting presumption against retention of supplemental state law claims). In addition, if Plaintiff's negligence claim was an attempt to allege the state law tort of medical malpractice, his complaint is not sufficient. Illinois law requires any Plaintiff who is seeking damages for medical malpractice to file an affidavit with the complaint providing required information. *See* 735 Ill. Comp. Stat. § 5/2-622(a). Failure to file the required affidavit is grounds for dismissal of the claim. *See* 735 Ill. Comp. Stat. § 5/2-622(g).

    IT IS THEREFORE ORDERED:

1) The Plaintiff's complaint is dismissed for failure to state a claim pursuant to Fed. R. Civ. Proc. 12(b)(6) and 28 U.S.C. Section 1915A. The Court declines to exercise supplemental jurisdiction over any potential state law claims. *See* 28 U.S.C. §1367(c). In addition, based on the exhibits attached to Plaintiff's complaint, the Court does not believe Plaintiff will be able to state a meritorious claim if he is given an opportunity to file an amended complaint. This case is closed. All pending motions are denied as moot. [5, 6 ]

2) This dismissal shall count as one of the Plaintiff's three allotted strikes pursuant to 28 U.S.C. Section 1915(g). The clerk of the court is directed to record the Plaintiff's strike in the three-strike log.

3) If the Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a). A motion for leave to appeal *in forma pauperis* MUST set forth the issues the Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the Plaintiff does

choose to appeal, he will be liable for the $505 appellate filing fee irrespective of the outcome of the appeal.

Entered this 17th day of May, 2017.

                                                  s/ James E. Shadid
                                   _____
                                                    JAMES E. SHADID
                                          UNITED STATES DISTRICT JUDGE